# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:15-CV-056-RLV-DCK

| | |
|---|---|
| **DONALD E. LEDFORD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Defendant's Motion For Summary Judgment" (Document No. 14). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Donald E. Ledford ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On April 9, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning April 2, 2012. (Transcript of the Record of Proceedings ("Tr.") 18, 234-240). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about August 16, 2012, and again after

reconsideration on June 6, 2013. (Tr. 18, 180-183, 187-189). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 187).

Plaintiff filed a timely written request for a hearing on June 27, 2013. (Tr. 18, 194-195). On June 5, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge Gregory M. Wilson ("ALJ") in Franklin, North Carolina. (Tr. 18, 51-100). In addition, Leanna L. Hollenbeck, a vocational expert ("VE"), Russell R. Bowling, Plaintiff's attorney, and witness Pamela E. Ledford, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on July 21, 2014, denying Plaintiff's claim. (Tr. 15-44). On September 15, 2014 Plaintiff filed a request for review of the ALJ's decision, which was ultimately denied by the Appeals Council on January 15, 2015. (Tr. 1-6, 10-12, 14). The July 21, 2014 ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on March 16, 2015. (Document No. 1). On April 2, 2015, the undersigned was assigned to this case as the referral Magistrate Judge. The parties submitted a "Joint Status Report" (Document No. 10) on May 28, 2015, indicating that they had discussed the implications of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and would address that case as appropriate in their upcoming filings.

Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 13) were filed July 14, 2015; and "Defendant's Motion For Summary Judgment" (Document No. 14) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 15) were filed September 9, 2015. Plaintiff has declined to file a brief in response, and the time to do so has lapsed. See (3:13-MC-198-FDW, Document No. 1).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner − so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 2, 2012, and the Plaintiff's date last insured, December 31, 2013.[1] (Tr. 18). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

| | | |
|---|---|---|
| | | impairments that meet the duration requirement in § 404.1509 - if no, not disabled; |
| | (3) | whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled; |
| | (4) | whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and |
| | (5) | whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled. |

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 42-43).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since April 2, 2012, his alleged disability onset date, through his date last insured of December 31, 2013. (Tr. 20). At the second step, the ALJ found that cervical degenerative disc disease with ulnar neuropathy and radiculopathy, migraine headaches, anxiety disorder with panic attacks and seizures, depression, dementia, and bipolar disorder, were severe impairments.[2] (Tr. 20). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 26).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform medium work activity, with the following limitations:

> The claimant retains the capacity to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently. He can sit for up to 6 hours in an 8-hour workday and stand/walk for up to 6 hours in an 8-hour workday. Pushing and pulling with the right upper extremity is limited to frequent. The claimant can never climb ladders, ropes or scaffolds. He is limited to frequent fingering, feeling and overhead reaching. He must avoid concentrated exposure to hazards. He is further limited to simple, repetitive tasks with 1, 2 step instructions in a low stress work environment, defined as non-production work and no fast-paced work. He is further limited to no public contact.

(Tr. 29). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a project manager (sedentary, skilled work), tractor trailer driver (semiskilled, medium work), health equipment servicer (skilled, very heavy work), and trash collector (semiskilled, medium work). (Tr. 42).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 42-43). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included bench assembler, laundry work and mail clerk. (Tr. 43). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social

Security Act, at any time between his alleged disability onset date of April 2, 2012, and his date last insured, December 31, 2013. (Tr. 43).

Plaintiff on appeal to this Court contends that the ALJ erred in his consideration of: (1) Plaintiff's mental RFC; (2) Plaintiff's overall RFC; and (3) and a treating physician's opinion. (Document No. 13, pp.4-5). The undersigned will discuss each of these contentions in turn.

**A.    Mental RFC**

In his first assignment of error, Plaintiff argues that the ALJ failed to provide a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments. (Document No. 13, pp.5-11). Plaintiff notes that the "regulations require the ALJ to rate the degree of functional loss resulting from the mental impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." (Document No. 13, pp.5-6) (citing 20 C.F.R. § 404.1520a(c)(3)).

Plaintiff alleges that the ALJ failed to provide a functional analysis of Plaintiff's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." (Document No. 13, pp.8-9)(quoting SSR 96-8p). Moreover, Plaintiff alleges that the ALJ improperly limited him to "simple, repetitive tasks with 1, 2 step instructions in a low stress environment," without discussing his ability to stay on task. (Document No. 13, pp.10-11) (citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015)). Plaintiff concludes that these alleged errors require that this matter be remanded for further consideration of Plaintiff's mental functional abilities. Id.

In response, Defendant contends that the ALJ properly assessed Plaintiff's RFC in accordance with SSR 96-8p and Mascio. (Document No. 15, pp.5-11). As adopted below, Defendant effectively addresses each of Plaintiff's contentions. Id.

To begin, Defendant notes that the ALJ considered Plaintiff's ability to understand, remember, and carry out instructions. (Document No. 15, p.6). The ALJ found that Plaintiff had the RFC to perform simple, repetitive tasks with 1, 2 step instructions. Id. (citing Tr. 29). In support of this finding, the ALJ noted that a treatment note from July 2012 indicated that Plaintiff's memory was within normal limits, and that his attention and concentration were "focused." Id. (citing Tr. 40) (quoting Tr. 409). The ALJ additionally noted that Dr. William McDaniel, who evaluated Plaintiff for a consultative exam on May 20, 2013, reported that Plaintiff could understand "moderately complicated instructions." Id. (citing Tr. 40) (quoting Tr. 478). The ALJ also noted that on or about October 3, 2013, Plaintiff's cognitive functions were normal upon examination and he had an appropriate fund of knowledge. Id. (citing Tr. 35) (citing Tr. 503). The ALJ assigned great weight to the opinion of the state agency consultant, Dr. Tovah Wax ("Wax"), who found that Plaintiff could perform simple, routine, repetitive tasks. Id. (citing Tr. 41) (citing Tr. 133-150). According to Dr. Wax, Plaintiff had the "mental ability to understand and remember at least simple instructions and work procedures." Id. (quoting Tr. 146).

Next, Defendant asserts that the ALJ considered Plaintiff's ability to use judgment in making work-related decisions. (Document No. 15, p.7). Defendant notes that the ALJ considered a consultative exam report from Dr. Alina Feas ("Feas"), who reported that Plaintiff had fair judgment and insight. Id. (citing Tr. 22, 386). Defendant also notes that the ALJ considered mental RFC assessments from Dr. Wax and Dr. Willens who found that Plaintiff was not

significantly limited in his ability to make simple work-related decisions. Id. (citing Tr. 41-42, 128, 146).

Defendant further asserts that the ALJ considered Plaintiff's ability to respond appropriately to supervision and coworkers. (Document No. 15, p.7). The ALJ noted that Dr. Wax found that Plaintiff could work in "low social settings" Id. (citing Tr. 41) (quoting 147). Accordingly, the ALJ's RFC finding restricted Plaintiff to work that did not require "public contact." Id. (citing Tr. 29). Dr. Wax also opined that Plaintiff "has the ability to relate appropriately to supervisors and coworkers." Id. (citing Tr. 147). The ALJ also noted the opinion of Dr. Richard Willens, a nonexamining state agency consultant, who found that Plaintiff could cooperate effectively with co-workers in completing simple tasks. Id. (citing Tr. 42) (citing Tr. 129). The ALJ additionally considered function reports from Plaintiff and his wife, in which they indicated that Plaintiff got along "super" and "great" with authority figures, including "bosses." Id. (citing Tr. 41) (quoting Tr. 276, 309).

Regarding routine changes and pressures in a work setting, Defendant notes that the ALJ found that "Plaintiff had the RFC to work 'in a low stress work environment, defined as non-production work and no fast-paced work.'" (Document No. 15, p.6) (quoting Tr. 29). Defendant notes that in support of this finding, the ALJ assigned great weight to the RFC assessment of Dr. Wax, who opined that Plaintiff had "the ability to adapt to work demands associated with full-time work." Id. (citing Tr. 41) (citing Tr. 133-150). See also, (Tr. 147)

Finally, Defendant asserts that the ALJ adequately addressed Plaintiff's moderate difficulties with concentration, persistence or pace by limiting his RFC to "simple, repetitive tasks with 1, 2 step instructions in a low stress work environment, defined as **non-production work and no fast-paced work**." (Document No. 15, p.7) (quoting Tr. 29) (emphasis added). Defendant argues that the ALJ's limitation to non-production work and no fast paced work accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace. Id. (citing Linares v.

9

Colvin, 5:14-CV-120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."); and Henig v. Colvin, 2015 WL 5081619, at *12 (D.Md. Aug. 26, 2015) (holding that a limitation to no production-line type work accounts for moderate limitations in concentration, persistence, or pace)).  In addition, Defendant argues that the ALJ sufficiently addressed Plaintiff's ability to stay on task.  (Document No. 15, p.8) (citing Tr. 28, 409) (noting focused attention and concentration), (Tr. 41, 146) ("mental ability to sustain concentration to perform a variety of tasks), and (Tr. 42, 128-129) (noting ability to "maintain attention and concentration for two hours at a time," "cooperate on simple, routine tasks," and to "usefully perform routine tasks on a sustained basis."

The undersigned finds that contrary to Plaintiff's assertions, the ALJ adequately addressed Plaintiff's mental RFC and relied on substantial evidence in the record to support his conclusions. Compare SSR 96-8p(4);  20 C.F.R. § 404.1545(c);  and (Tr. 27-29, 40-42). See also, Ashcraft v. Colvin, 3:13-CV-417-RLV-DCK, 2015 WL 9304561, at *7 (W.D.N.C. Dec. 21, 2015) ("the Court must review the ALJ's discussion of Plaintiff's medical record and determine whether the medical record, as discussed by the ALJ, provides a sufficient basis to meaningfully review the ALJ's RFC conclusions, and, ultimately, deduce whether his RFC determination is supported by substantial evidence in the record."). Moreover, unlike Mascio where the Fourth Circuit determined the ALJ had ignored Mascio's moderate limitation in her ability to maintain concentration, persistence, or pace, the ALJ here repeatedly addressed evidence related to Plaintiff's ability to maintain concentration, persistence or pace.  Compare Mascio, 780 F.3d at 633, 638 and (Tr. 27-29, 35, 40-42).

**B.     RFC Determination**

Next, Plaintiff contends that "the ALJ did not explain why limitations contained in a medical opinion he gave great weight were not included in the RFC finding." (Document No. 13, pp.12-13). Specifically, Plaintiff argues that although the ALJ stated that he gave great weight to Dr. Wax's opinions, he did not include several of Dr. Wax's opinions in the RFC determination. (Document No. 13, p.12).

In response, Defendant first notes that the ALJ was not required to discuss every finding contained in Dr. Wax's RFC assessment. (Document No. 15, p.11) (citing Pike v. Astrue, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011) (holding that an ALJ is "not required to discuss every finding in every medical report"). Defendant goes on to argue that here the "ALJ clearly considered Dr. Wax's report, and he explained what weight he assigned to that report." Id. (citing Tr. 41).

> In the narrative section of his RFC assessment, Dr. Wax opined that Plaintiff could perform simple, routine, repetitive tasks in a low stress, low social setting, despite his earlier findings that Plaintiff had moderate limitations in various mental functional areas (Tr. 147). Dr. Wax's opinion was largely consistent with the ALJ's finding that Plaintiff had the RFC to perform simple, repetitive tasks with 1, 2 step instructions in a low stress work environment with no public contact (Tr. 29).

(Document No. 15, p.12).

Defendant then concludes that there was no conflict between Dr. Wax's opinion and the ALJ's RFC finding that the ALJ was required to resolve, and thus, no error. Id.

The undersigned finds Defendant's arguments persuasive. In addition, to the extent the ALJ did not fully explain or include limitations identified by Dr. Wax, as discussed above, the undersigned is satisfied that the ALJ relied on other sufficient evidence in the record to support his

RFC determination and his ultimate conclusion that Plaintiff was not disabled during the time period in question.

## C.     Treating Physician's Opinion

Finally, Plaintiff argues that the ALJ erred by failing to "give good reasons" for rejecting the opinion of Plaintiff's treating physician, David Franks, M.D. ("Franks"). (Document No. 13, pp.13-18). Plaintiff acknowledges that the ALJ attributed "limited weight" to Dr. Frank's opinion because he found "the evidence does not support Dr. Frank's findings." (Document No. 13, p.14) (quoting Tr. 34). However, Plaintiff asserts that "the ALJ is required to explain his reasons for rejecting the probative evidence he did not accept." (Document No. 13, p.15) (citing 20 C.F.R. § 404.1527(c)(2)).

Plaintiff's primary argument is that the ALJ did "not discuss the MRI that appears in the record three times," and arguably supports Plaintiff's claims of chronic pain. (Document No. 13, pp.15-18) (citing Tr. 444-45, 450-451, 460-461). Plaintiff thus concludes that the ALJ failed to properly evaluate Dr. Franks' opinion. (Document No. 13, pp.18-19).

In response, Defendant asserts that substantial evidence supports the ALJ's determination to assign little weight to Dr. Frank's opinion. (Document No. 15, pp.12-15) (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (noting that, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight); 20 C.F.R. §§ 404.1527(c)(2) (a treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence in the case record), and 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion")).

Defendant acknowledges Plaintiff's allegation that the ALJ failed to discuss an MRI of the cervical spine taken on August 30, 2012, but then points out that the ALJ explicitly cited that MRI and commented that it showed multilevel degenerative changes. (Document No. 15, p.13) (citing Document No. 13, p15); see also, (Tr. 24) (citing Tr. 444-445). Moreover, the ALJ noted that treating physician Hubert Gooch, M.D. ("Gooch") "concluded that while the claimant does have degenerative changes as noted in the MRI, he does not see anything that explains the degree of symptomatology that the claimant describes." (Tr. 24) (citing Tr. 446-457). Dr. Gooch also stated that Plaintiff's "sensation was intact and his gait and tandem walking were normal. Straight leg raising, cross straight leg raising, popliteal compression testing and femoral stretch testing were all negative." (Tr. 34) (citing Tr. 446-457).

Defendant further notes that the ALJ also considered and discussed a more recent MRI from May 28, 2013. (Document No. 15, p.13) (citing Tr. 34). The ALJ decision includes the following analysis:

> . . . I find the evidence does not support Dr. Frank's findings, accordingly, I attribute limited weight to his opinion.
>
> For instance, MRI's and x-rays of the pelvis and lumbar spine were unremarkable and failed to support his allegations. An **MRI** of the lumbar spine on **May 28, 2013**, revealed normal disc heights with no foraminal narrowing or stenosis. An **MRI** of the pelvis revealed no bony abnormalities and normal hip joints. An x-ray of the pelvis revealed only mild degenerative joint disease (**Exhibit 23F**).
>
> Moreover, consultative examiner **Dr. Johnston noted** no sensory deficits in the feet. He also noted that the claimant did not use a cane to ambulate and muscle tone was 5/5 in all extremities with no atrophy (**Exhibit 2F**). Similarly, **Dr. Burgess noted** that straight leg raise test in the supine position was normal bilaterally. There was no hip joint tenderness, redness, warmth, swelling, or crepitus. The claimant ambulates with a stiff gait; however, it is not unsteady, lurching, or unpredictable. There seems to be an antalgic gait favoring the right leg somewhat. The claimant does not require the use of a handheld assistive device. In addition, as set forth in my

13

> credibility analysis above there were multiple reports where a question asked if an assistive device was used and the check block form was not checked to indicate the use of assistive device. He was able to walk on the heels and toes, was able to stand on one leg at a time, was able to perform tandem gait, and was able to squat without difficulty (**Exhibit 8F**).

(Tr. 34) (citing 522-534, 367-373, 390-395) (emphasis added).

Based on the foregoing, Defendant contends that the ALJ identified medical evidence that was inconsistent with Dr. Frank's opinion. (Document No. 15, p.14). Defendant also effectively observes that the ALJ noted that Dr. Frank's treatment notes indicated Plaintiff's symptoms were improving. Id. (citing Tr. 35) (citing Tr. 523, 525-526). In addition, Defendant notes that the ALJ specifically recognized that Dr. Franks had found that Plaintiff was limited to sitting for **5 minutes**, and then the ALJ opined that "[c]ontrary to Dr. Frank's opinion with respect to sitting tolerances I note the **claimant sat from 2:30 PM until 3:50 PM without apparent discomfort** during the hearing." Id. (citing Tr. 35) (emphasis added). The ALJ also noted that Plaintiff's daily activities suggested a greater tolerance for sitting, standing, and walking than found by Dr. Franks. Id. (citing Tr. 35, 270-274).

The undersigned is persuaded that Plaintiff's argument that the ALJ failed to consider and/or provide good reasons for the consideration he gave Dr. Frank's opinion is without merit. Defendant's arguments and the ALJ decision indicate that the ALJ carefully considered Dr. Frank's opinion and relied on substantial evidence in the record in deciding to afford Dr. Frank's opinion limited weight.

Although Plaintiff does not allege that the ALJ erred in his consideration of Plaintiff's pain, the undersigned is satisfied that Defendant's brief effectively rebuts such a suggestion. See (Document No. 15, pp.15-16).

## IV. CONCLUSION

In short, the undersigned finds that the ALJ provides a thorough explanation for his decision, and that Defendant's brief effectively defends the ALJ's decision. Moreover, as noted above, Plaintiff has declined his opportunity to file a response to Defendant's arguments. As such, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 14) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond,

416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

      **IT IS SO RECOMMENDED**.

Signed: March 25, 2016

David C. Keesler
United States Magistrate Judge